**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-2157

HANNAH ROBERTSON, Individually and on Behalf of her Minor Child, R.R.S.,

        Plaintiff - Appellant,

      v.

ANDERSON MILL ELEMENTARY SCHOOL; SPARTANBURG COUNTY SCHOOL DISTRICT #6; ELIZABETH FOSTER, Individually and in Her Official Capacity as Principal,

        Defendants - Appellees.

Appeal from the United States District Court for the District of South Carolina, at Spartanburg. Timothy M. Cain, District Judge. (7:19-cv-00668-TMC)

Argued: January 29, 2021                              Decided: March 2, 2021

Before WILKINSON, NIEMEYER, and THACKER, Circuit Judges.

Affirmed by published opinion. Judge Thacker wrote the opinion, in which Judge Wilkinson and Judge Niemeyer joined.

Eric Chalmers Poston, CHALMERS POSTON LLC, Columbia, South Carolina, for Appellant. Jasmine Rogers Drain, Thomas Kennedy Barlow, HALLIGAN MAHONEY & WILLIAMS, Columbia, South Carolina, for Appellees.

THACKER, Circuit Judge:

During the 2018–19 school year, the fourth grade class at Anderson Mill Elementary School in Spartanburg County, South Carolina was given an assignment that required each student to write an "essay to society" on any topic. The essays were to be compiled into a booklet, and copies of that booklet were to be placed in the fourth grade classroom so that students could read the essays throughout the remainder of the school year. Additionally, copies of the essay booklet were to be sent home with the students for their families to read.

R.R.S.,[1] an Anderson Mill Elementary School fourth grade student, wrote the essay to society on the topic of LGBTQ[2] equality. Because Elizabeth Foster, the school's principal, determined that the subject matter of R.R.S.'s essay was not age-appropriate, she instructed R.R.S.'s teacher to inform R.R.S. that the school was not going to include the essay in the fourth grade class's essay booklet. R.R.S.'s mother, Hannah Robertson ("Appellant"), filed suit on behalf of herself and R.R.S., alleging that Principal Foster infringed upon R.R.S.'s First Amendment right to free speech.

The district court held that Principal Foster's conduct was a proper exercise of the authority possessed by school officials to regulate school-sponsored student speech and dismissed Appellant's complaint. For the reasons detailed below, we agree, and affirm the judgment of the district court.

---

[1] Because R.R.S. is a minor, we use only initials to identify the student.

[2] "LGBTQ" is an acronym that stands for lesbian, gay, bisexual, transgender, and queer or questioning.

I.

A.

R.R.S. was ten years old when the "essay to society" was assigned in the winter of 2019. According to the amended complaint, which is the operative complaint in this case, R.R.S.'s maternal grandfather is a member of the LGBTQ community. Furthermore, the amended complaint describes R.R.S. as a "proud advocate[] of LGBTQ rights." J.A. 16.[3] For these reasons, R.R.S. decided to write about LGBTQ equality. Her essay, reprinted here verbatim, stated the following:

> To society,
>
> I don't know if you know this but peoples view on Tran's genders is an issue. People think that men should not drees like a women, and saying mean things. They think that they are choosing the wrong thing in life. In the world people can choose who they want to be not being told that THEIR diction is wrong. I hope people understand that people can hurt themselves from others hurting their feelings. People need to think before they speak because one word can hurt someone's feelings. We need to fix this because this is getting out of hand!

*Id.* at 16–17.

Principal Foster reviewed the essays submitted by the fourth grade class before they were compiled into an essay booklet. Upon reviewing R.R.S.'s LGBTQ-themed essay, Principal Foster instructed R.R.S.'s fourth grade teacher to inform R.R.S. that the essay was not going to be included in the class's essay booklet because, in Principal Foster's view, the essay's topic "was not [] appropriate." J.A. 17. R.R.S. then submitted a revised

---

[3] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

3

essay, which addressed bullying instead of LGBTQ issues. In the revised essay, R.R.S. wrote, again verbatim:

> To society,
>
> I don't know if you know this but peoples view on bullying is an issue. People think that saying mean things is ok and saying mean things. They think that they are choosing the wrong thing in life. In the world people can choose who they want to be not being told that THEIR diction is wrong. I hope people understand that people can hurt themselves from others hurting their feelings. People need to think before they speak because one word can hurt someone's feelings. We need to fix this because this is getting out of hand!

*Id.* at 17–18.

Appellant alleges that shortly before the filing of the original complaint on March 6, 2019, Principal Foster "defended her decision" to not include R.R.S.'s LGBTQ-themed essay in the fourth grade class's essay booklet through "a series of increasingly abusive, harassing, emotionally distressful and/or clearly unwarranted communications with" Appellant. J.A. 18. Appellant further alleges that during these communications, Principal Foster provided the following justifications for her decision: "the original paper would make other parents upset"; the original paper "would create a [sic] undesirable situation at the school"; the original paper "was not acceptable"; "it was not age-appropriate to discuss transgenders, lesbians, and drag queens outside of the home"; and "due to the type of school this is, the people that work here and the students and families of the students that go here, the topic would be disagreeable." *Id.* (internal quotation marks omitted).

However, in a letter dated March 15, 2019, Principal Foster informed Appellant that she had reversed course and decided that "both of [] R.R.S.'s papers would be published"

4

in the fourth grade class's essay booklet. J.A. 19. But by this point, Appellant, citing concerns about R.R.S.'s privacy, no longer wanted the original essay to be included in the essay booklet. Eventually, both of R.R.S.'s essays were removed from the essay booklet at the request of Appellant.

B.

On March 20, 2019, Appellant filed the amended complaint[4] at issue against Anderson Mill Elementary School, Spartanburg County School District #6 (the "School District"), and Elizabeth Foster, individually and in her official capacity as principal[5] (collectively, "Appellees"). The amended complaint contains a federal constitutional claim, brought pursuant to 42 U.S.C. § 1983, as well as claims brought under South Carolina law. Specifically, the constitutional claim alleges that Principal Foster violated R.R.S.'s First Amendment right to free speech "by forcing [] R.R.S. to change the topic of [the] paper." J.A. 20. As for the state law claims, the amended complaint alleges causes of action for both intentional infliction of emotional distress and negligent infliction of

---

[4] The original complaint and the amended complaint name the same defendants and allege identical causes of action. The primary difference between the two complaints is the amended complaint alleges that Principal Foster improperly communicated with Appellant after the filing of the original complaint.

[5] The Supreme Court has explained that filing an action against a government official in her official capacity is merely "another way of pleading an action against [the] entity of which [the] officer is an agent," and that "[s]uits against state officials in their official capacity therefore should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Accordingly, we will refer to Appellant's claim against the School District and Principal Foster in her official capacity as a claim against the School District.

5

emotional distress. Appellant seeks relief in the form of, inter alia, "actual damages, punitive damages, declaratory and injunctive relief[,] and nominal damages." *Id.* at 22.

On April 3, 2019, Appellees filed a motion to dismiss most, but not all, of the amended complaint. Appellees moved the district court to dismiss all claims against Anderson Mill Elementary School, the constitutional claim brought against Principal Foster in her individual capacity, Appellant's claim for injunctive relief, and the state law claims with respect to all named defendants.

On April 24, 2019, Appellant filed a motion for leave to file a second amended complaint. According to Appellant, the proposed second amended complaint would not name any new defendants or alter the causes of actions alleged in the first amended complaint, but rather would "account[] for significant, relevant factual developments that ha[d] occurred since the Amended Complaint was filed" and would be relevant to Appellant's state law claims. J.A. 75.

In an order issued on October 15, 2019, the district court dismissed Appellant's amended complaint in its entirety and denied as moot Appellant's motion for leave to file a second amended complaint. First, the district court granted Appellees' motion to dismiss all claims against Anderson Mill Elementary School because the school is not a legal entity separate and distinct from the School District. Second, the district court granted, on qualified immunity grounds, Appellees' motion to dismiss the constitutional claim brought against Principal Foster in her individual capacity. Third, the district court *sua sponte* dismissed the constitutional claim brought against the School District because Appellant failed to "allege[] any constitutional violation based on an official policy or custom." J.A.

6

120. Fourth, the district court denied Appellant's requests for declaratory and injunctive relief, primarily because it found that Principal Foster did not violate R.R.S.'s constitutional rights. Fifth, having already dismissed Appellant's federal claims, the district court declined to exercise supplemental jurisdiction over Appellant's state law claims, and dismissed those claims without prejudice. Sixth, the district court denied as moot Appellant's motion for leave to file a second amended complaint because the proposed amendments pertained solely to Appellant's state law claims, over which the court had already declined to exercise supplemental jurisdiction.

Appellant filed the instant appeal on October 16, 2019. She challenges only two parts of the district court's October 15 order: (1) the grant of Appellees' motion to dismiss the constitutional claim against Principal Foster in her individual capacity; and (2) the *sua sponte* dismissal of the constitutional claim brought against the School District. We reject both of Appellant's challenges and affirm the district court in full.

II.

We review a district court's grant of a motion to dismiss de novo. *See Lucero v. Early*, 873 F.3d 466, 469 (4th Cir. 2017). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). At this stage of review, we must draw "all reasonable inferences in favor of" Appellant, the plaintiff below. *Carey v. Throwe*, 957 F.3d 468, 474 (4th Cir. 2020).

7

III.

A.

Constitutional Claim Against Principal Foster in Her Individual Capacity

Appellant claims the district court erred by granting, on qualified immunity grounds, Appellees' motion to dismiss the constitutional claim against Principal Foster in her individual capacity. Qualified immunity is a defense that "shields government officials from personal liability when their conduct does not violate clearly established rights of which a reasonable person would have known." *Brickey v. Hall*, 828 F.3d 298, 303 (4th Cir. 2016) (ellipsis and internal quotation marks omitted). In other words, "in gray areas, where the law is unsettled or murky, qualified immunity affords protection to" government officials who take "action[s] that [are] not clearly forbidden." *Occupy Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013). Government officials who are sued in their individual capacities are protected under this doctrine "unless (1) the allegations underlying the claim, if true, substantiate [a] violation of a federal statutory or constitutional right; and (2) this violation was of a clearly established right of which a reasonable person would have known." *Brickey*, 828 F.3d at 303 (alteration in original) (internal quotation marks omitted).

It is left to the discretion of federal district and appellate courts to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In this case, we will start with the first inquiry and need not proceed any further

8

because the allegations underlying Appellant's amended complaint, even if true, do not substantiate a violation of R.R.S.'s constitutional rights.

Our assessment of whether Principal Foster violated R.R.S.'s First Amendment rights by initially refusing to include R.R.S.'s LGBTQ-themed essay in the fourth grade class's essay booklet is guided by *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260 (1988).[6] In that case, a group of high school students claimed their school district violated their First Amendment rights by refusing to publish articles about divorce and teenage pregnancy that the students had written for their school newspaper. *See id.* at 263–64. The Supreme Court held that no constitutional violation had occurred, and in the process established the governing test for First Amendment cases stemming from school officials restricting school-sponsored student speech. Pursuant to this test, school officials "do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns." *Id.* at 273.

This case falls neatly within the *Hazelwood* framework. The test articulated in *Hazelwood* applies to "student speech that is disseminated under [the] auspices" of a school -- i.e., speech that is contained in "school-sponsored publications, theatrical productions, and other expressive activities that students, parents, and members of the public might

---

[6] Appellant's briefing repeatedly acknowledges *Hazelwood*'s controlling status. *See, e.g.*, Appellant's Br. 8 (describing *Hazelwood* as "the current legal standard"). Nonetheless, at oral argument, Appellant's counsel inexplicably disavowed the application of *Hazelwood*.

9

reasonably perceive to bear the imprimatur of [a] school." *Hazelwood*, 484 U.S. at 271–72. It also applies to expressive activities that "may fairly be characterized as part of the school curriculum" and "are supervised by faculty members and designed to impart particular knowledge or skills to student participants." *Id.* at 271.

Here, the fourth grade class's essay booklet satisfies both definitions of school-sponsored student speech. To begin, it was school officials -- most notably, R.R.S.'s fourth grade teacher -- who decided to compile the fourth grade students' essays into a booklet and send copies of that booklet home with the students for their families to read. It would be reasonable, then, for the students' families to view the essay booklet as bearing the imprimatur of Anderson Mill Elementary School and the School District. Additionally, R.R.S. wrote the LGBTQ-themed essay to society pursuant to a school assignment that was supervised by both the fourth grade teacher and Principal Foster. Clearly, the essays were part of the Anderson Mill Elementary School fourth grade curriculum.

The question, then, is whether Principal Foster's regulation of R.R.S.'s speech was "reasonably related to legitimate pedagogical concerns." *Hazelwood*, 484 U.S. at 273. We conclude that it was, because, as Appellant acknowledges in the amended complaint, Principal Foster's initial refusal to include R.R.S.'s essay in the fourth grade class's essay booklet was actuated at least in part by her concern that the essay's topic was "not age-appropriate" for fourth graders. J.A. 18.

Given that a copy of the essay booklet was to be placed in the classroom for students to read and discuss, Principal Foster's concern about the age-appropriateness of the essays contained in the fourth grade class's essay booklet was pertinent. Furthermore, while

reasonable minds could debate the pedagogical efficacy of shielding fourth graders from topics like sexuality and gender identity, it cannot be denied that maintaining the age-appropriateness of school-sponsored expressive activities is a pedagogical concern that passes muster under *Hazelwood*. Indeed, *Hazelwood* itself elucidates that schools "must be able to take into account the emotional maturity of the intended audience in determining whether to disseminate student speech on potentially sensitive topics." 484 U.S. at 272. Similarly, this court has recognized that "it is not a court's obligation to determine which messages of social or moral values are appropriate in a classroom. Instead, it is the school board, whose responsibility includes the well-being of the students, that must make such determinations." *Lee v. York Cnty. Sch. Div.*, 484 F.3d 687, 700 (4th Cir. 2007).

Appellant submits that we should reject the district court's conclusion that Principal Foster did not violate R.R.S.'s constitutional rights because "[t]he district court provided no adequate explanation for holding that R.R.S.'s essay had no valid legitimate educational purpose." Appellant's Br. 10. This argument, like most of the arguments advanced by Appellant, completely misses the point. As noted, under *Hazelwood*, school officials may constitutionally restrict school-sponsored student speech -- even student speech that serves a "valid legitimate educational purpose" -- so long as the restriction is reasonably related to legitimate pedagogical concerns. Therefore, Appellant's argument about any purported educational purpose served by R.R.S.'s LGBTQ-themed essay is irrelevant.

For these reasons, Appellant has not plausibly established that Principal Foster infringed upon R.R.S.'s constitutional rights. Because there was no constitutional violation in the first instance, we affirm the district court's holding that Principal Foster was entitled

11

to qualified immunity without needing to consider the "clearly established" prong of the qualified immunity analysis.

Appellant also argues that Principal Foster's initial refusal to include the LGBTQ-themed essay in the fourth grade class's essay booklet was impermissible "viewpoint-based discrimination." Appellant's Br. 10. Viewpoint-based discrimination occurs when a government official "targets not subject matter, but particular views taken by speakers on a subject." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). Neither the Supreme Court nor this court has decided whether restrictions on school-sponsored student speech must be viewpoint neutral under *Hazelwood*, and other circuits are split on this question. *Compare, e.g.*, *Peck ex rel. Peck v. Baldwinsville Cent. Sch. Dist.*, 426 F.3d 617, 633 (2d Cir. 2005) (declining to abandon the requirement of viewpoint neutrality, "even in the limited context of school-sponsored student speech," absent "clear direction from the Supreme Court"), *with Fleming v. Jefferson Cnty. Sch. Dist. R-1*, 298 F.3d 918, 926 (10th Cir. 2002) ("[W]e conclude that *Hazelwood* allows educators to make viewpoint-based decisions about school-sponsored speech.").

We need not pick a side in this debate today. Even assuming, without deciding, that school officials' restrictions on school-sponsored student speech must be viewpoint neutral, Appellant has not plausibly alleged that Principal Foster's restriction on R.R.S.'s speech violated that principle. None of the justifications that Appellant attributes to Principal Foster's initial refusal to include R.R.S.'s LGBTQ-themed essay in the fourth grade class's essay booklet -- i.e., her concern about the age-appropriateness of the essay and her fear that the essay's subject matter would anger the families of fourth grade

12

7:19-cv-00668-TMC    Date Filed 03/02/21    Entry Number 33    Page 13 of 15

students -- suggest that the restriction had anything to do with the *content* of R.R.S.'s essay. On the contrary, these justifications illustrate that Principal Foster was averse to the *subject* of LGBTQ rights appearing in the essay booklet.

B.

Constitutional Claim Against the School District

Appellant also claims the district court erred by *sua sponte* dismissing her constitutional claim against the School District. Appellant argues that the district court's *sua sponte* dismissal runs afoul of Federal Rule of Civil Procedure 41, which, she proclaims, "is the sole Rule governing dismissal of actions in a federal district court." Appellant's Br. 1 n.3, 5 n.18. That contention is incorrect. First of all, Rule 12(b)(6), not Rule 41, is the applicable Federal Rule of Civil Procedure in this case. A complaint may be dismissed pursuant to Rule 12(b)(6) if it "fail[s] to state a claim upon which relief can be granted."

And, as our sister circuits have recognized, there are instances in which "*sua sponte* dismissals of complaints under Rule 12(b)(6) are appropriate." *Chute v. Walker*, 281 F.3d 314, 319 (1st Cir. 2002) (italics supplied) (internal ellipsis omitted); *see also, e.g.*, *Hager v. DBG Partners, Inc.*, 903 F.3d 460, 464 (5th Cir. 2018); *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. Oct. 2020 update) ("Even if a party does not make a formal motion under Rule 12(b)(6), the district court judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim . . . ."). This procedure is the appropriate route. *See, e.g.*, *Jensen v. Conrad*, 570 F. Supp. 91, 99–100

(D.S.C. 1983), *aff'd*, 747 F.2d 185 (4th Cir. 1984), *abrogated on other grounds by DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989).

Importantly, district courts may only exercise their authority to *sua sponte* dismiss inadequate complaints if "the procedure employed is fair to the parties." 5B Wright & Miller, Federal Practice and Procedure § 1357. Namely, the party whose complaint stands to be dismissed must be "afforded notice and an opportunity to amend the complaint or otherwise respond." *Chute*, 281 F.3d at 319; *see also Hager*, 903 F.3d at 464 ("[F]airness in this context requires both notice of the court's intention and an opportunity to respond." (alteration in original)).

Here, the district court did not comply with these requirements before *sua sponte* dismissing Appellant's constitutional claim against the School District. Nonetheless, the district court's failure to accord Appellant these procedural protections does not necessitate reversal in this case because Appellant was not prejudiced as a result. *See Chute*, 281 F.3d at 319 (explaining that not "every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed" (italics supplied)). To state a viable constitutional claim against the School District, Appellant must establish that Principal Foster infringed upon R.R.S.'s First Amendment rights by initially refusing to include R.R.S.'s LGBTQ-themed essay in the fourth grade class's essay booklet. Even without notice of the district court's intent to *sua sponte* dismiss her constitutional claim against the School District, Appellant had every incentive to argue this point fully, as establishing a violation of R.R.S.'s constitutional rights is also required to state a viable constitutional claim against Principal Foster in her individual capacity. Indeed, a bulk of Appellant's brief is dedicated

14

to this very purpose. *See* Appellant's Br. 6–15 (section of brief labeled "Principal Foster violated R.R.S.'s clearly established First Amendment free speech rights"). As a result, Appellant cannot plausibly demonstrate that a constitutional violation occurred. Advance notice of the district court's intent to *sua sponte* dismiss her constitutional claim against the School District would not have altered this reality.

IV.

For the reasons set forth herein, the judgment of the district court is

*AFFIRMED*.